Good morning, Your Honors. I'm Randy Baker for the appellant Rodrigo Alvarez-Quinonez. I'd like to reserve three minutes for rebuttal. This morning I'm going to address the issue we briefed, which is that the authentication of about 40-plus recorded telephone conversations imputed to Mr. Alvarez-Quinonez by Agent Provencal was improperly admitted. It was admitted in violation of both the federal rule of evidence 901, which governs authentication of documents, but it was also inappropriate opinion evidence under rule 701. Now the government agrees with us that Mr. Provencal was not familiar with Alvarez-Quinonez's voice, so he couldn't authenticate the recordings based on that. However, the government maintains that under the circumstances of the case, Agent Provencal was sufficiently informed so that he could infer reasonably that Alvarez-Quinonez was the speaker. Now we concede on the 20th of January when Mr. Alvarez-Quinonez was arrested in a Jeep with drugs and then later made a telephone call identifying himself as the person in the car. Yes, we agree that Mr. Agent Provencal could correctly impute that conversation to him. However, none of the other conversations consisted of circumstances of that sort where it was clearly rational to make that imputation. Now in the Gadsden case, which the government relies on, in that case the police officer was able to reasonably impute a voice on a recording to the The officer knew the prison in which he was incarcerated, knew the wing in which he was incarcerated, knew that and had access to logs, which the inmate had to request permission to use the phone, so he was able to review those logs. In addition, he was able to identify a new voice coming from that wing of the prison after the defendant had been incarcerated in that wing. And finally, the content of the conversations was not simply unlawful drug trafficking, because as we know, unfortunately, it's not unique to this case, but the matter discussed was specific to that case. So I submit that Gadsden is not opposite here and none of the circumstances. Gadsden would certainly be instructive because he didn't know the voice before, but then through the circumstance he was able to identify the voice as being that of Mr. Gadsden. So here, as you've indicated, of course we have the phone call that you talk about, um, but then we have a whole series of transcripts and the cell site and other locational information. So why can't the constellation of those items constitute sufficient foundation? Well, Your Honor, as a matter of logic, it absolutely could. I just think in this case, notwithstanding the fact that they were able to track, well, TT19, the phone imputed to Alvarez-Quinonez, they were tracking it since December 10th of 2019. But none of these calls are correlated with any location identification. There's a call on December 17th where Alvarez-Quinonez is seen outside of a restaurant. A restaurant, and there's a photo on that, right? Exactly. Then there's no transcript from that day. There's no indication that telephone call had anything to do with drugs. The only occasion on which the government was able to show a correlation between their tracking and drug transactions on the phone was in relationship to that trip up from California, which ended, I think it was in Chehalis where the truck is confiscated. So I'm not disputing that. They've got it there. But all the other calls, and by the way, these are the calls in which Alvarez-Quinonez is not merely acknowledging, you know, I'm involved with moving these drugs, but he's the person on TT19 is kind of coordinating drug transactions. This person wants this much there. I mean, it's very clear. So I just want to make sure I understand your argument because the first issue really is foundation to even talk about, is this Mr. Alvarez-Quinonez? And then later there's a sort of sufficiency argument based on, well, if that was error, you know, where do we end up? So if he can hear a voice and he knows that that voice belongs to Alvarez-Quinonez, and then we have a series of transcripts, whether they're dealing drugs or not, but they're listening to the voices, again, can't he listen to those and figure out that speaker number one is Alvarez-Quinonez and that's not the same as speaker number two, and he goes through a series of those? Why wouldn't that give you enough foundation? You might then attack the credibility, but it wouldn't necessarily result in exclusion, would it? Well, Your Honor, I think at that point what we're describing, what you're describing, is comparing voices. And if that's what's going on, jurors can do that too. This is not, he's testifying, this is lay opinion. Well, but in a way, because there's all these transcripts, it's like somebody brings in all the accountant records and throws them on the table. Well, the jury could figure that out, but even a lay witness bookkeeper who's not necessarily an expert might say, but here's, you know, how those get organized if we look at them. So isn't that basically what Provencal is doing? Well, Your Honor, I don't think it's the same thing as accounting. Accounting is kind of a fairly specialized activity. Voice recognition, and there's experts, of course, who do that, but Agent Provencal wasn't. So he was talking just as a regular lay person on the street. He was excluded on testifying as an expert, is that right? Or he wasn't permitted to be labeled an expert? He was not identified and not professed to be an expert in voice identification. And as far as we know, there's nothing to indicate he had such expertise. And so in that case, the tape should have been played for the jury. And, you know, we've seen them. You know, the trial, I think, was three days. Maybe it would have been three and a half days. It wasn't that onerous for the jurors to be asked to invoke their competences as adults and listen. And in fact, under 901, I'm sorry, under 701, you know, one of the conditions of an opinion and Provencal's testimony has to satisfy both 901 and 701. One of the conditions is it has to be have some percipient awareness of an incident that's not available to the jury, and thereby that testimony is rationally introduced as opinion. But if the issue is, well, he could compare voices, jurors could compare voices also. And so I think in this case, that that analogy with that would break down under 701. You're saying even if it got in under 901, it would break down under 701? Yes. Okay. Yes. And just briefly, I'd like to point out the relevance of this evidence, why it's prejudicial, why we can't assume the result, can't infer the result, likely would have been the same absent this error. Clearly, what we know is enough. There's substantial evidence that Alvarez was involved in drug trafficking, that he's acknowledging, I'm in the car and I was moving it, and it's my job. We got that. There's substantial evidence. What we don't have is any clear evidence he's conspiring to sell drugs. As far as we know, he's the equivalent of a mule, although, you know, a domestic mule, the guy's involved in transporting drugs somewhere. Could, I'm not and couldn't, if that's all the jury had, would I be able to come in and say there's no substantial evidence? I wouldn't make that argument. But the argument I will make is the opposite criterion is, can we be reasonably assured? Is it more likely than not, the jury would have said, not only is he transporting drugs, but he's involved in their distribution. He's a dealer and he's conspiring. I think that's why the prosecutor began with such a lengthy discussion of how Alvarez-Quinonez was coordinating all this drug trafficking prior to January 20th with Velazquez. I'll reserve the rest of my time, if I may. Mr. Baker, just for your planning purposes, although you didn't have two minutes left, I'll give you two minutes for rebuttal. Thank you very much. I did a poor job of keeping track of my time. It goes fast. Good morning, and may it please the Court. Tanya Culbertson on behalf of the United States. The District Court did not abuse its discretion here in allowing any attributed transcripts or in allowing a lay opinion under 701. But what I'd like to start with is the concessions that the defendant has made in his reply brief and then here today. I do not agree that just the circumstances around January 20th would be insufficient to support both of the convictions. I think the phone calls and the events surrounding January 20th are sufficient to sustain both of the convictions, and it was argued that way to the jury. During closing, the government said the drugs used on January 20th are also part of the conspiracy. That charge as well. It's not an either-or. That's evidence of both crimes. That's at SER 316 and 320. So, you know, there are conversations on the 22nd when he is talking to the source of supply in Mexico. He says, I will take responsibility. He talks about how he was the one who directed Ramos to go down to Phoenix and to go to Los Angeles. So I think that is clearly sufficient evidence of the conspiracy charge as well as the possession charge. So the court doesn't necessarily need to get into the full analysis on 901 and 701. I think those concessions alone are enough to affirm, but I can certainly address those issues for the court as well. I'd like to start with the tapes and whether the jury could have discerned the voice tones and just point out for the court that the defendant did not ask for the tapes to be played for the jury. He objected to the transcripts with attributions coming in. He certainly could have said, I would like the tapes to be played for the jury. He did not make that request. There is a procedure for doing that. There are standard Ninth Circuit instructions when you are going to be playing a foreign language tape. Now, obviously, the best evidence of the content of, you know, what is said in these foreign language recordings is the transcripts. And so the government, you know, thought this was the efficient way to do it. We have such strong evidence linking the defendant to TT19. We have this case agent with so much personal knowledge of the investigation. He has listened to all of these tapes exhaustively. He has developed familiarity with the voice tones. He can attribute sufficiently under 901. And the showing under 901 is fairly minimal. Once you have made sort of the minimal prima facie showing that this evidence is what it purports to be, it is up to the jury to then decide if they believe that evidence and what weight to give to that evidence. And the jury was instructed on that in instruction number 13. They were told, you know, you have heard that these statements were made by the defendant. It is up to you to decide if they indeed were. And then it is up to you to decide what weight to give to that. So that is all argument that goes to the weight that the jury should give the evidence. I also just want to clarify. I heard opposing counsel say that the government concedes that agent Provencal cannot testify to familiarity with the voice tones. And I just want to put a little gloss on that. We concede he did not have prior familiarity with the voice tones. We certainly know that he developed a great deal of familiarity with the defendant's voice over the course of the investigation. And essentially what he was saying in making the attributions on the transcripts was the voice is the same on all of the calls. And once I have identified who this person is during the stop on January 20th, I now have a name to put with that voice that is consistent throughout the calls. Well, he does, though, rely on this whole constellation of the investigation. Yes, because that is true also. So it is not really agent Provencal himself. The question is, can you really say he has first-hand knowledge under 701? And that raises a really important question, it seems to me, because we have the one phone call. But to convict him of both of these counts, I think you are going to need those transcripts. And those don't really come from him or his personal knowledge. I would push back on that a little bit, Your Honor, and point to Gadsden, which talks about what personal knowledge is required under 701. And Gadsden talked about the kind of involvement of a case agent who is going to give a lay opinion about recordings. And opposing counsel in his reply brief cited to a portion of Gadsden for what is sufficient. And Gadsden said, the officer had been involved in the investigation of the drug conspiracy since early 2010. His involvement spans the searches, multi-day surveillance of the residences, and the review of around 100 hours of prison phone calls. Based on his interpretations of the personal knowledge of facts he learned during the investigation, that is sufficient. We have that here and more. We have the lead case agent who gets up on the wires. He is the one who is requesting and receiving subscriber data. He is receiving all of the real-time tracking data every 15 minutes from the defendant's phone. He is then using that to direct the surveillance. In some circumstances, he himself is participating in surveillance. He talks about, just for example, he personally observed one of the co-conspirators at his home address, the one whose voice he already was familiar with. He also gives testimony that he's in the wire room on December 31st. He is in there listening to the calls as they are coming in. That's the event with the brown Mitsubishi, and he's directing the stop of that Mitsubishi. He's present at the search of the Mitsubishi. He's also present on January 20th. He testifies he's conducting surveillance on I-5 coming down, and he sees the lights of the stop. Now, he's not present at the arrest, but he is present for the knowledge of the investigation. He's also listening to hours and hours of calls and developing that familiarity with the voice tone. One twist here is that it's in Spanish, and although he doesn't need to necessarily testify to the content, because that's then been translated into the transcript, but does that raise another question about authentication, where he's not a Spanish speaker, meaning the officer? I think Ortiz answers that to some degree. In Ortiz, you have the probation officer who has personal knowledge of the defendant's voice speaking in English, and this court ruled that that familiarity was sufficient to authenticate the voice tones of the defendant speaking Spanish, and those tapes were not played for the jury, and Ortiz found that that was sufficient. Were there any Spanish speakers on the jury? I do not know the answer to that. I do know that they were given the standard instruction that if any of them did speak Spanish, that when they reviewed the transcripts, they were to focus only on the English language, even though there was a column showing the Spanish language, but I don't actually know any of them spoke Spanish. Were any tapes at all played for the jury? No tapes at all were played for the jury, and they were not, as I said, requested to be played. Why didn't the government put on the tapes? I think... I mean, if it's so clear that it's the same person speaking, that would have been the most easiest way to prove your case, right? Put on the tapes, let the jury make the decision, compare this to that. As I said, it certainly can be done. I think... I'm sure it is done. And it is done, that is true, and I think perhaps the concern here is we know that the actual content they need to focus on is from the transcripts, and it is perhaps difficult for a jury to listen, you know, focus on the voice tones, but also be reading the transcripts, and we don't need to do that here because the evidence, the linking, the defendant to TT19 is so strong that we can put on the case... It might have been the best evidence. It is certainly a practice that can be done, and it may have been the best evidence, but again, I would just point out it was not asked for by the defendant, and I don't think it was plain error or an abuse of discretion by the district court judge not to insist on that in this case. As I said, I addressed the harmlessness argument up front, so I won't say anything more about that unless the panel has any further questions. We ask that you affirm. Thank you. Thank you, Ms. Culbertson. Okay, Mr. Baker, can we... A few points. This case, of course, is not a sufficiency of the evidence case. If it were, I'd have a greater difficulty. It isn't, and so we are entitled to reversal so long as this court is not persuaded that it's more likely than not the jury would have reached the same conclusion absent this error, regardless of whether there was substantial evidence, and I would point out the fact the prosecutor spent reasonably, I would say, extensive time discussing the contents of the drug transactions arranged prior to the 20th, going back to December and arguing, by the way, jurors, I think he was up to December 17th or something. That's enough to convict on both these counts, and it probably was, but my point is that it was important to his case, and I don't think we can be confident it wasn't. As far as the defense not playing the tapes, the defense isn't obligated to try and goof around and see, well, maybe... Complement the government. Yeah, I don't think that's how we do it, nor should we, and as far as Gadsden and the surrounding circumstances being deemed adequate in that case, I note Gadsden was a plain error review. It wasn't abuse of discretion as in this case, but the other thing was the court of appeal in that case said, well, based on what the officer testified to, the court reasonably could have assumed he was relying entirely on what he gathered from his personal role in the investigation. Here, Provencal makes it very clear. I didn't just rely on my personal involvement. I had access to Thank you. Thank you, counsel. So the case of the United States versus Alvarez-Quinonez will now be submitted.
judges: McKEOWN, GOULD, Baker